Claims 66-72, 77, 78, 111-116, 120-126, 130 and 131 were rejected under 35 U.S.C. Section 102(e) as being anticipated by Swanson et al., no. 5,161,059. In partial response to this rejection, Applicant herewith submits the Declaration of inventor Theodore R. Whitney, together with accompanying exhibits, swearing back of the effective date of the Swanson et al. reference under Rule 131(b), as to claims 66-69, 77, and 123-126. Applicant submits that the Declaration and its attachments fully overcomes the basis for the cited rejection.

Although the remaining claims rejected on this basis under Section 102 (e), namely claims 70-72, 75, 76, 78, 111-118 and 120-122 could be the subject of a similar Declaration, it is submitted that they patentably distinguish on their merits over the Swanson et al. teaching. Therefore, Applicant respectfully traverses the rejection as to such claims. This includes also the rejection of claims 75 and 76 under Section 103 as unpatentable over Swanson et al. in view of the article by the Optical Sciences Group, as discussed hereinafter.

Claims 70-72, for example, define a configuration in which "rings are disposed in sets defining a pupil function having more than one zone", a feature which is not shown or suggested by Swanson et al. Examination of the Swanson et al. reference and its counterparts reveals no showing or suggestion of pupil functions in general, or the introduction of $\pi$-phase changes or opaque areas for

the purpose of affecting the resulting imaging. In Swanson et al., all of the plateaus and ring systems progressively follow each other according to this $2^n$ step algorithm. The Swanson et al. equations describe the ring boundaries in terms of these gradual changes for the various corrections they suggest but contain nothing suggesting abrupt phase or transmissivity changes which would create pupil functions.

The reference in the Office Action to Fig. 1c, col. 2, line 42 of Swanson et al., is not applicable, because this merely refers to step variations which are progressive through all sets and which do not use phase reversal or transmissivity variations in any way. The same is true of the statement in Swanson et al. at col. 3, lines 50-54, wherein the overall "phase profile" (col. 3, lines 44-45) is defined in terms of equation (1) given therein. There is no teaching or suggestion of any kind that there can be a $\pi$-phase variation, or any other variation between the progressive step sequences in one ring as related to the next ring. Similarly, the statement at col. 4, lines 40-50, deals only with the "phase depth $\theta$ to which various" mask patterns are to be etched, as set out in Table 1. Again, these equations in Swanson et al. deal only with the width and depth of the patterns, not with how optical effects such as pupil functions can be introduced by use of variations between or within rings. The reference (also cited in the Office Action) to col. 8, lines 25-34 (with respect to Fig. 9), is only a general allusion to a lens system, referred to as an "optics

column 32", which presumably is to have a diffractive element as previously described in Swanson et al. Therefore it is devoid of any teaching that (as set out in claims 70-72) optical imagery may be modified by phase variations between adjacent multi-level structures by the use of light transmissivity patterns.

Claim 78, which depends from claim 77, patentably distinguishes over Swanson et al. in setting forth that the "rings" of claim 77 are "concentric about a central axis and disposed in sets of varying phase relation to define a pupil function having different zones". This obviously means varying the phase relation between ring or ring groupings, a feature not comprehended in Swanson et al. in which the "phase profile" is expressed by equation (1) at col. 3, line 48, as modified by an additional phase term expressed at equation (2) at line 2 of column 4, but without any delineation either of the use of changes in phase relation between rings or of usage of such phase relations to achieve a pupil function.

Claim 111 distinguishes in the same manner as previously discussed, in setting forth that the patterns in the light transmissive plate are "arranged in groups having phase shifts between them, to define different pupil functions in the optical system". The idea of phase shifts between groups of patterns and the additional idea of defining different pupil functions have no counterpart whatsoever in Swanson et al.

Claims 112-116, dependent from claim 111, distinguish as the parent claim, but in addition further distinguish in setting out particulars as to the manner in which pupil functions are established.

Independent claim 117 and dependent claim 118 distinguish for like reasons and also additional terminology. Claim 117, for example, defines the groupings as introducing "predetermined phase shifts, reversal phase shifts, and opaque areas" such that more than one pupil function is introduced. Again, there is no counterpart in Swanson et al. Dependent claim 118 further sets forth that these variations are local and in "0 and $\pi$ fashion" also not comprehended or suggested by Swanson et al.

Parent claim 120 and dependent claims 121 and 122 distinguish in different terminology, but for like reasons, in defining the diffractive element as "having a plurality of phase shift patterns therein which vary so as to have reversed phase shifts between them so as to provide a predetermined pupil function."

Claims 75 and 76 were rejected under 35 U.S.C. Section 103 over Swanson et al. in view of the article by the Optical Sciences Group. It is said in the Office Action that the first lens on the cover produces "three types of magnifications", so that this can be combined with Swanson et al. to constitute the first outside annular reference pattern and the second inside annular reference

pattern. This rejection is respectfully traversed on, *inter alia*, a number of different grounds. First, even assuming that the Optical Sciences Group article shows different magnifications in different areas of a Fresnel lens, this does not constitute a disclosure of annular reference patterns. Second, the use of magnification variations in different parts of a Fresnel lens would not in any way teach that one should employ inner and outer reference patterns with respect to a transmissive ring pattern. Third, on careful examination, Applicant cannot find any outside magnification pattern in the first lens on the cover of the article. It appears merely that there is a large central Fresnel lens area that provides substantial magnification and an outside peripheral ring that provides no magnification. This outside ring appears to be divided by an intermediate circle or line, but apart from this line, the ring is a single light transmissive annulus and not a lens. Consequently, since the inner and outer annular reference patterns of Applicant's claims 75 and 76 are not mere magnification functions, and since the Optical Sciences Group article teaches nothing that would add such a feature to Swanson et al., the claims are resubmitted in their present form.

Claims 73, 74, 79, 80 and 119 were objected to as depending from rejected parent claims. Claims 73, 79 and 119 have been rewritten as independent so that all of these claims are now submitted to be allowable. As previously noted, claims 81-85, 127-129

and 132-135 have been indicated to be allowable on a substantive basis.

In the light of the above considerations, favorable action on the rejected and objected to claims is respectfully requested.

Respectfully submitted,

April 22, 1994
Date

Raymond A. Bogucki
Reg. No. 17,426

Attorneys for Applicant

MERCHANT, GOULD, SMITH,
EDELL, WELTER & SCHMIDT
Suite 400
11150 Santa Monica Boulevard
Los Angeles, CA 90025-3395
Telephone: (310) 445-1140

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231 on April 22, 1994
(Date of Deposit)

Raymond A. Bogucki

Approved by Examiner J.R. 6-26-94




FIG. 6




FIG. 7

G1600

10 x C

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/897,248 | 06/11/92 | WHITNEY | T 30048.1US03 |

EXAMINER
ROBBINS, T

E5M1/0712
MERCHANT, GOULD, SMITH, EDELL, WELTER
AND SCHMIDT
WESTWOOD GATEWAY II, SUITE 400
11150 SANTA MONICA BLVD.
LOS ANGELES, CA 90025-3395

| ART UNIT | PAPER NUMBER |
|---|---|
| 2507 | 14/D |

DATE MAILED: 07/12/94

## NOTICE OF ALLOWABILITY

T.R. 7-5-94

PART I.

1. ☑ This communication is responsive to the amendment, and terminal disclaimer filed on 4-25-94
2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☑ The allowed claims are 66-85, and 111-135
4. ☐ The drawings filed on ____________ are acceptable.
5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. ____________ filed on ____________.
6. ☑ Note the attached Examiner's Amendment.
7. ☑ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☑ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☑ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

PART II.

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   - a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. ____________. CORRECTION IS REQUIRED.
   - b. ☑ The proposed drawing correction filed on 4-25-94 has been approved by the examiner. CORRECTION IS REQUIRED.
   - c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   - d. ☐ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
- ✓ Examiner's Amendment
- ✓ Examiner Interview Summary Record, PTOL-413
- _ Reasons for Allowance
- ✓ Notice of References Cited, PTO-892
- ✓ Information Disclosure Citation, PTO-1449
- _ Notice of Informal Application, PTO-152
- _ Notice re Patent Drawings, PTO-948
- _ Listing of Bonded Draftsmen
- _ Other

14

Application No. : 07/897248 1

Art Unit: 2507

*Information Disclosure Statement*

The Case and Fauere references submitted by the applicant were not listed on the PTO 1449 filed 10/12/93, and therefore have not been considered. They have been placed in the application file, but the information referred to therein has not been considered as to the merits. The remaining references have been listed on the PTO 1449 submitted on 10/15/92, and therefore have been considered.

*Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Kita et al is cited as teaching a diffraction grating which consists of varying binary levels of plateaus whose width and height vary. This reference teaches that the distance between the grooves changes "nearly linearly" (col. 4, line 42). The claimed invention teaches the rings varying "nonlinearly in width relative to a central axis of the rings" (claim 66, lines 12 -13).

Pasco and Kedmi et al are cited as teaching that which is claimed in the claimed invention, however neither of these references have a filing date (or effective filing date) which is prior to the priority date of the invention.

*Examiner's Amendment*

Application No. : 07/897248 2

Art Unit: 2507

This application is in condition for allowance except for the presence of claims 4-55, 92-110, and 136-139 to a nonelected invention without traverse. Accordingly, the claims have been cancelled.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Thomas Robbins whose telephone number is (703) 305-3792.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-0956.

T.R.
Thomas Robbins
June 26, 1994

Scott J. Sugarman
SCOTT J. SUGARMAN
PRIMARY EXAMINER
ART UNIT 257

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

FORM PTO-892 (REV. 2-92) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

SERIAL NO. 07/897248 | GROUP ART UNIT 2507 | ATTACHMENT TO PAPER NUMBER 14

**NOTICE OF REFERENCES CITED**

APPLICANT(S): T. Whitney

U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | A | 5073007 | 12-17-91 | J. Kedmi et al | 359 | 565 | 6-11-90 |
| * | B | 5151826 | 9-29-92 | E. Pasco | 359 | 565 | 3-8-91 |
| * | C | 4690506 | 9-1-87 | T. Kita et al | 359 | 575 | — |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

R

S

T

U

EXAMINER: Thomas Robbins | DATE: 6-26-94

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

G1604

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/897,248 | 06/11/92 | WHITNEY T | 30048.1US03 |

E5M1/0712
MERCHANT, GOULD, SMITH, EDELL, WELTER
AND SCHMIDT
WESTWOOD GATEWAY II, SUITE 400
11150 SANTA MONICA BLVD.
LOS ANGELES, CA 90025-3395

| EXAMINER | |
|---|---|
| ROBBINS | |
| ART UNIT | PAPER NUMBER |
| 2507 | 14 |

DATE MAILED: 07/12/94

EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Thomas Robbins (3) ____

(2) Raymond Bogucki (4) ____

Date of Interview 6-30-94

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: ____

Agreement ☑ was reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: 40-55, 92-110, and 136-139.

Identification of prior art discussed: ____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: The applicants representative ~~agreed~~ agreed To an examiner's amendment which would cancel the above mentioned claims, drawn To a non-elected invention, in order To place the application in condition for allowance

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1—7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

Thomas Robbins
Examiner's Signature

PTOL-413 (REV. 1-84)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

G1605

MAIL ROOM JUN 22 1995 98 PAT. & TRADEMARK OFF.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No.: 5,386,319 Docket: 30048.1US03

Issue Date: January 31, 1995 Patentee: T. R. Whitney

Title: HIGH RESOLUTION IMAGERY SYSTEMS AND METHODS

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on June 19, 1995;

Raymond A. Bogucki

APPROVED

AUG 23 1995

FOR THE COMMISSIONER OF PAT. & T.M.

PATENT & TRADEMARK OFFICE RECEIVED JUL 28 1995 CERTIFICATE OF CORRECTION BR.

REQUEST FOR CERTIFICATE OF CORRECTION

Assistant Commissioner for Patents
Washington, D. C. 20231

Sir:

It is requested that a Certificate of Correction be issued correcting printing errors appearing in the above-identified United States patent. Two copies of the text of the Certificate in the suggested form are enclosed.

_ As some of the errors listed are due to Applicant's mistake, our check in the amount of $ is enclosed to cover the Certificate fee.

_X_ As none of the errors listed is due to Applicant's mistake, no fee is necessary in connection with this Certificate.

///

KM12022 07/20/95 5386319 13-2724 120 142 100.00CH

G1620

Issuance of the Certificate of Correction would neither expand nor contract the scope of the claims, and re-examination is not required.

Respectfully submitted,

Date June 19, 1995

Raymond A. Boguckí

Raymond A. Boguckí
Registration No. 17,426
MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT
Suite 400
11150 Santa Monica Boulevard
Los Angeles, CA 90025-3395
Telephone: (310) 445-1140

F:\FORMS\PAT.003

Staple Here Only!

PRINTER'S TRIM LINE

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 5,386,319

DATED : January 31, 1995

INVENTOR(S) : Theodore R. Whitney

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Related U.S. Application Data [62], delete "Oct. 13, 1987" and insert --Oct. 25, 1987--.

Column 1, line 6, after the word "May" insert --8--; line 34, delete "micron" and insert --microns--.

Column 4, line 23, delete "A real" and insert --Areal--.

Column 7, line 15, delete "on to" and insert --onto--.

Column 8, line 21, delete "cannot;" and insert --cannot,--.

Column 10, line 2, delete "(±0.005Δ)." and insert --(±0.005").--.

Column 11, line 63, delete "log" and insert --lag--.

Column 12, line 44, delete "relationship" and insert --relationships--; line 50, delete "61.60" and insert --61.0--.

Column 14, line 51, delete "critical" after the word "the".

Column 22, line 62, delete "critical" after the word "the".

Column 23, line 2, delete "critical" after the word "the"; line 3, insert --stop-- after the word "aperture"; line 30 delete "critical" after the word "the", after the word "aperture" insert --stop--.

Column 15, line 41, delete "tje" and insert --the--.

Column 16, line 37, delete "dichroid" and insert --dichroic--.

Column 19, line 38, delete "advantagely" and insert --advantageously--; line 42 delete "biam" and insert --beam--.

MAILING ADDRESS OF SENDER:
MERCHANT, GOULD, SMITH, EDELL, WELTER & SCHMIDT
Attn: Raymond A. Bogucki
11150 Santa Monica Blvd.
Suite 400
Los Angeles, CA 90025-3395

PATENT NO. 5,386,319

Docket No. 30048.1US03

No. of add'l copies @ 50¢ per page ▸ 0

FORM 1050 (REV. 12-84)

G1622

Staple Here Only!

PRINTER'S TRIM LINE

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 5,386,319

DATED : January 31, 1995

INVENTOR(S) : Theodore R. Whitney

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 22, line 8, delete "sequence" and insert --sequences--.

Column 23, line 7, delete "30" and insert --230--; line 21, delete "here" and insert --Here--.

Column 25, claim 1, line 6, delete "degined" and insert --defined--.

MAILING ADDRESS OF SENDER:
MERCHANT, GOULD, SMITH, EDELL, WELTER & SCHMIDT
Attn: Raymond A. Bogucki
11150 Santa Monica Blvd.
Suite 400
Los Angeles, CA 90025-3395

PATENT NO. 5,386,319

Docket No. 30048.1US03

No. of add'l copies @ 50¢ per page ► 0

FORM 1050 (REV. 12-94)FORM 1050 (REV. 12-94)

G1623

JOURNAL OF THE OPTICAL SOCIETY OF AMERICA VOLUME 51, NUMBER 1 JANUARY, 1961

# The Phase Fresnel Lens

KENRO MIYAMOTO*
*Institute of Optics, The University of Rochester, Rochester, New York*

(Received October 26, 1959)

In order to deform the wave surface passing through an optical system by the amount $\phi(u,v)$, it is suggested that a phase Fresnel lens be inserted in the pupil of the optical system. Assuming $0\leqslant\phi(u,v)<m\lambda$, the $(u,v)$ region of the pupil is divided into $m$ zones by Fresnel's condition

$$(k-1)\lambda\leqslant\phi(u,v)<k\lambda;\quad k\text{th zone},\ k=1,2,\cdots,m,$$

where $\lambda$ is the wavelength. If the phase Fresnel lens be made so that it shifts the wave surface by the amount $\phi(u,v)-(k-1)\lambda$ in each $k$th Fresnel zone, the amount of its deformation in each zone is smaller than $\lambda$, but this phase Fresnel lens is quite equivalent to a lens which deforms the wave surface by $\phi(u,v)$ because of Fresnel's condition. Some properties of the phase Fresnel lens are discussed. This technique is more applicable to the infrared region.

## INTRODUCTION

In recent years many papers have been published concerning apodization,[1] that is, the appropriate phase shift to the wave surface or absorption at the pupil of an optical system in such a way that the image quality is improved. The phase Fresnel lens described here may be considered as a generalization of the circular grating which has been recently discussed by several authors.[2,3] It can also be regarded as a branch of apodization.

## DIVISION OF FRESNEL ZONES

Let us assume that it is necessary to deform a wave surface by the amount $\phi(u,v)$ at the pupil plane $(u,v)$ of an optical system in order to improve the aberration or to change the structure of the image for a certain purpose. In this case, if we insert an aspherical surface (Fig. 1), the figuring depth $d(u,v)$ is the order of

$$d(u,v)\sim-\phi(u,v)/(n-1),$$

$n$ being the refractive index. When the wave is incident normally on the surface (as in the case of a Schmidt camera), the foregoing formula gives a good approximate value of the depth. When $d(u,v)$ is the order of the wavelength, the surface can be figured accurately by deposition of a thin film. However if $d(u,v)$ becomes large, it is necessary to figure the glass plate, and the accurate figuring is not easy.

Now we divide the region of the pupil into $m$ Fresnel zones according to Fresnel's condition, so that

$$(k-1)\lambda\leqslant\phi(u,v)<k\lambda;\quad k\text{th zone}\quad k=1,2,\cdots,m, \tag{1}$$

assuming $0\leqslant\phi(u,v)<m\lambda$ for convenience, where $\lambda$ is the wavelength. Then the phase Fresnel lens is made, in order to deform the wave surface by the amount

$$\phi(u,v)-(k-1)\lambda;\quad k=1,2,\cdots,m, \tag{2}$$

in each $k$th Fresnel zone (Fig. 2). In this case the amount of deformation in all zones is smaller than $\lambda$, so we can realize the phase Fresnel lens (to be called PFL for brevity from now on) relatively easily by depositing a thin film. As the wave surface is deformed according to the conditions (1) and (2), a PFL is quite equivalent to a lens which deforms the wave surface by the amount $\phi(u,v)$ [Fig. 3(b)]. As a result, a PFL can be used as an aspheric lens. Several applications can be considered and some examples are shown in Fig. 4. By




FIG. 1. Figured plate and wave front. K, propagating direction of light; $d(u,v)$ depth of figuring; $\phi(u,v)$, amount of deformation of wave surface.

* Also on the staff of Nippon Kogaku K.K. (Nippon Optical Industrials Company, Ltd.)

[1] B. Dossier, Rev. opt. 33, 57, 147, 267 (1954) (references before 1954 are described here); P. Croce, Rev. opt. 35, 569, 642 (1956); E. L. O'Neill, I.R.E. Trans. on Inform. Theory IT-2, 56 (1956); A. Maréchal *et al.*, Optica Acta 5, 256 (1958); J. A. MacDonald, Proc. Phys. Soc. (London) 72, 749 (1958); K. Sayanagi, J. Appl. Phys. Japan 27, 623 (1958); H. Saito, J. Appl. Phys. Japan 28, 502 (1959).

[2] J. Tsujiuchi, Rev. opt. 37, 1 (1958); J. Dyson, Proc. Roy. Soc. (London) A248, 93 (1958); T. Fujiwara, J. Appl. Phys. Japan 28, 515 (1959).

[3] G. G. Sliusarev, Doklady Akad. Nauk S.S.S.R. 113, 780 (1959); A. I. Tudorovskii, Optika i Spektroskopiya 4, 126 (1959).



G1991

A563




FIG. 2. Fresnel zone. (a) Figured plate; (b) phase Fresnel Lens.

inserting a PFL in the stop position of the optical system, the spherical aberration can be improved without influencing the other Seidel aberrations.[4] If we choose $\phi(u,v)=\alpha(u^2+v^2)^{\frac{1}{2}}$, PFL becomes a axicone lens[2] and PFL of $\phi(u,v)=\beta u$ is a brazed grating itself.

### SPECTRAL CHARACTERISTICS

As condition (1) contains the wavelength in its formula, Fresnel's condition is satisfied only for a special wavelength $\lambda_0$. However, the zones satisfying the Fresnel's condition for the special wavelength $\lambda_0$ [and with the deforming function $\phi(u,v)$] also satisfy it for arbitrary wavelength $\lambda$ if the deforming function is changed to $(\lambda/\lambda_0)\phi(u,v)$; that is,

$$(k-1)\lambda_0 \leqq \phi(u,v) < k\lambda_0$$

$$(k-1)\lambda \leqq (\lambda/\lambda_0)\phi(u,v) < k\lambda.$$

If we consider the properties of a PFL with deforming function $\phi(u,v)=-(u^2+v^2)/(2f)$, this is equivalent to a lens whose focal length is $f$ for the wavelength $\lambda_0$, but for the other wavelength $\lambda$ the PFL may act as a lens having the focal length $(\lambda_0/\lambda)f$. Another PFL with the deforming function $\phi(u,v)=\alpha u$, corresponds to a blazed grating. These spectral characteristics are peculiar to any zone plate or grating.

However there are some problems to be analyzed. As is shown in Fig. 3(c), the actual wave surface of another wavelength $\lambda$ passing through a PFL deviates from that of $(\lambda/\lambda_0)\phi(u,v)$ up to the maximum amount $|\lambda-\lambda_0|$ and it has discontinuities at the boundaries of the different Fresnel zones, provided the variation of the refractive index of the deposited film due to the wavelength is negligible. In order to investigate this effect on image formation, let us introduce the quantity $\theta(u,v)=(\lambda/\lambda_0)\phi(u,v)$. Then, the function $\exp(2\pi i\phi/\lambda)$ can be expressed as a series in $\exp(2\pi il\theta/\lambda)$

$$\exp(2\pi i\phi/\lambda)=\sum_{l=-\infty}^{\infty} A_l \exp(2\pi il\theta/\lambda)$$

within the region $0\leqq\theta<\lambda$ or $0\leqq\phi<\lambda_0$, where $A_l=\{\exp[2\pi i(\lambda_0-\lambda)/\lambda]-1\}/[2\pi i(\lambda_0-l\lambda)/\lambda]$. It can




FIG. 3. Wave surface of different wavelengths. (a) Phase Fresnel lens; (b) wave surface of fundamental wavelength; (c) wave surface of different wavelength.

[4] H. H. Hopkins, *Wave Theory of Aberrations* (Oxford University Press, New York, 1950). M. Born and E. Wolf, *Principles of Optics* (Pergamon Press, New York, 1959).

G1992

also be expressed in the following way:

$$\exp(2\pi i\phi/\lambda)=\frac{\sin[\pi(\lambda_0-\lambda)/\lambda]}{\pi(\lambda_0-\lambda)/\lambda}\exp\{(2\pi i\theta/\lambda)$$

$$-[\pi i(\lambda_0-\lambda)/\lambda]\}\times\left\{1+\frac{\lambda_0-\lambda}{\lambda_0}\exp[-2\pi i\theta/\lambda]\right.$$

$$\left.+\frac{\lambda_0-\lambda}{\lambda_0-2\lambda}\exp[2\pi i\theta/\lambda]+\cdots\right\}.$$

The same expression is also obtained in any $k$th zone $(k-1)\lambda\leqslant\theta<k\lambda$ because of the periodicity of exponential function. So the wave field of another wavelength $\lambda$ passing through a PFL can be considered as the superposition of the waves corresponding to $(\lambda/\lambda_0)\phi(u,v)$ and $l(\lambda/\lambda_0)\phi(u,v)$, $l$ being $0, -1, -2,\cdots$; $2, 3, 4\cdots$. The ratio of the amplitude of the main wave surface to those of the other harmonic wave surfaces is the order of $1:|\lambda_0-\lambda|/\lambda_0$. (For the case of the deforming function $\phi(u,v)=-(u^2+v^2)/(2f)$, the harmonic wave surfaces contribute to the formation of the multiple foci.) Accordingly, if we can neglect the harmonic components ($|\lambda_0-\lambda|\ll\lambda_0$), a PFL derived from the deforming function $\phi(u,v)$ for the fundamental wavelength $\lambda_0$ deforms the wave surface of another wavelength $\lambda$ by the amount of $(\lambda/\lambda_0)\phi(u,v)$.[6] So it has some different spectral characteristics and it may be utilized for the correction of the secondary spectrum of a doublet lens.




FIG. 4. Examples of the application of PFL., (a) Schmidt camera; (b) triplet.

This problem has been treated by Sliusarev and Tudorovskii[8] using a phase plate which may be regarded as a special case $[\phi(u,v)=-(u^2+v^2)/2f]$ of a PFL. As a similar result can be easily derived by using the previous result in a different way, the treatment will be briefly described. Let the indexes of two glasses of the thin doublet for the wavelength $\lambda$ be $n_1(\lambda)$ and $n_2(\lambda)$; and the power of each single lens of the doublet and of the PFL for the fundamental wavelength $\lambda_0$ be $\varphi_1$, $\varphi_2$, and $\varphi_3$ [$\varphi_3$ is defined by $1/f$, where $\phi(u,v)$ equals $-(u^2+v^2)/2f$]. Then, in order to correct the longitudinal color aberration of the whole system of the doublet and




FIG. 5. Secondary spectrum of a lens with unit power. Curve (a), $\Delta(\lambda)$ of the thin doublet BSC-F; Curve (b), $\Delta(\lambda)$ of the thin doublet C—SbF; Curve (c), $\Delta(\lambda)$ of the thin doublet BSC-F; and PFL.

[6] There is another type of PFL which is made so that it deforms the wave surface by the amount $\phi(u,v)-(k-1)p\lambda$ in each $k$th Fresnel zone defined by the $(u,v)$ region satisfying the condition $(k-1)p\lambda\leqslant\phi(u,v)<kp\lambda$, $k=1, 2,\cdots, m$, where $p$ is some proper integer, assuming $0\leqslant\phi(u,v)<mp\lambda$ in all $(u,v)$ regions. This type is more easily produced because the width of each Fresnel zone becomes broader; however, the effect of the discontinuities in the wave surface of the different wavelength becomes more serious than that of original PFL.

TABLE I. Indexes of glasses and powers of individual single lens.

| | Ordinary doublet | | Special doublet | |
|---|---|---|---|---|
| Glass | $n_1$(BSC517641) | $n_2$(F620362) | $n_1$(C512607) | $n_2$(SbF529516) |
| $\lambda_0=587.6$ mμ(a) | 1.51689 | 1.62019 | 1.51173 | 1.52850 |
| $\lambda_1=656.3$ mμ(c) | 1.51440 | 1.61517 | 1.50916 | 1.52539 |
| $\lambda_2=486.1$ mμ(F) | 1.52246 | 1.63230 | 1.51759 | 1.53563 |
| $\nu$ | 64.1 | 36.2 | 60.7 | 51.6 |
| Power | $\varphi_1=2.29649$ | $\varphi_2=-1.29649$ | $\varphi_1=6.07650$ | $\varphi_2=-5.07650$ |

PFL between $\lambda_0$, $\lambda_1$, and $\lambda_2$, we must select $\varphi_i$ so that

$$\varphi_1+\varphi_2+\varphi_3=1$$
$$x_1\varphi_1+x_2\varphi_2+x_3\varphi_3=0$$
$$y_1\varphi_1+y_2\varphi_2+y_3\varphi_3=0,$$

$$x_i=\frac{n_i(\lambda_1)-n_i(\lambda_0)}{n_i(\lambda_0)-1},\quad y_i=\frac{n_i(\lambda_2)-n_i(\lambda_0)}{n_i(\lambda_0)-1},\quad i=1,2$$

$$x_3=\frac{\lambda_1-\lambda_0}{\lambda_0},\qquad y_3=\frac{\lambda_2-\lambda_0}{\lambda_0}.$$

In the case of the combination of crown (positive) lens, flint (negative) lens, and PFL for the wavelength $d(\lambda_0)$, $F(\lambda_1)$, $c(\lambda_2)$, we have $\varphi_1=1.90364$, $\varphi_2=-0.91848$, and $\varphi_3=0.014842$. The value of the residual color aberration $\Delta(\lambda)\equiv\varphi(\lambda)-\varphi(\lambda_0)=\varphi(\lambda)-1$ is shown in Fig. 5 (curve c), with $\Delta(\lambda)$ for the ordinary crown-flint doublet (Fig. 5 curve a) and $\Delta(\lambda)$ for the doublet of glasses having special dispersions (Fig. 5 curve b). The refractive indexes of these glasses are shown in Table I.[a] It is noteworthy that the absolute values of $\varphi_i$ are small compared with those of the ordinary doublet and that the color correction is satisfactory.

For the collimeter lens with $F$ number $F$ 8, the focal length $F=500$ mm, the number of zones is 25 and the narrowest width of the zone is 0.63 mm.

In conclusion, the author wishes to express his sincere thanks to Professor R. E. Hopkins and Professor E. Wolf for useful advice.

[a] Taken from the catalog of Nippon Kogaku K. K.

#2549

MAIL ROOM
DEC 22 1987
PAT. & TRADEMARK OFF.

RECEIVED
JAN 12 '88
25 JAN '88
PATENT AND TRADEMARK OFFICE

L25 A#2
2-13-88
S028 DM
D 12-11-87

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Theodore R. Whitney December 18, 1987

Serial No.: 108,435 Group Art Unit 257

Filed : October 13, 1987

For : "HIGH RESOLUTION IMAGERY SYSTEMS AND METHODS"

## INFORMATION DISCLOSURE STATEMENT

1. Kenro Miyamoto, "The Phase Fresnel Lens", Journal of the Optical Society of America, Vol. 51, No. 1, January 1961, pp. 17-20. The relevance of this article is described in the specification on pages 3-5.

2. Melvin H. Horman, "Efficiencies of Zone Plates and Phase Zone Plates", Applied Optics, Vol. 6, No. 11, November 1967, pp. 2011-2013. The relevance of this article is described in the specification on pages 4-5.

3. S. Mallick, "Degree of Coherence in the Image of a Quasi-Monochromatic Source", Applied Optics, Vol. 6, No. 8, August 1967, pp. 1403-1405. The relevance of this article is described in the specification on page 17.

4. H. H. Hopkins, Wave Theory of Aberrations, (Oxford at the Clarendon Press, 1950), pp. 47-55. The relevance of this article is described in the specification on pages 26-27.

5. Keivin Burns et al, "Energy Levels and Wavelengths of the Isotopes of Mercury-199 and -200", Journal of the Optical Society of America, Vol. 62, No. 10, October 1952, pp. 717-718. The relevance of this article is described in the specification on pages 28-29.

6. John M. McLeod, "The Axicon: A Type of Optical Element", Journal of the Optical Society of America, Vol. 44, No. 8, August 1954, pp. 592-597. The relevance of this paper is described in the specification on pages 45-46.

7. H. Madjidi-Zolbanine et al, "Holographic correction of both chromatic and spherical aberrations of single glass lenses", Applied Optics, Vol. 18, No. 14, 15 July 1979, pp. 2385-2393. This article discusses the use of photographically prepared zoned gratings on holograms to correct chromatism and third-order spherical aberrations of lenses.

8. H. Dammann, "Blazed Synthetic Phase-Only Holograms", Optik 31, Heft 1, 1970, Seite 95-104. Stepped phase functions for optical phase reliefs take the form of holograms of stepped or sinusoidal nature to approximate thin blazed effects.

9. E. G. Loewen et al, "Grating efficiency theory as it applies to blazed and holographic gratings", Applied Optics, Vol. 16, No. 10, October 1977, pp. 2711-2721. Describes various conditions needed for efficiency of operation of blazed gratings.

10. Philip S. Considine, "Effects of Coherence on Imaging Systems", Journal of the Optical Society of America, Vol. 56, No. 8, August 1966, pp. 1001-1009. Discusses causes and nature of coherent field effects such as edge ringing, edge shifting and speckle when imaging using coherent light.

11. C. S. Ih et al, "Improved random spatial phase modulation for speckle elimination", Applied Optics, Vol. 17, No. 9, 1 May 1978, pp. 1447-1454. This paper is on the controlled elimination of spatial coherence using a pair of diffusers and a PZT crystal-deflected mirror (see Fig. 1).

12. Brian J. Thompson, "Diffraction by Semitransparent and Phase Annuli", Journal of the Optical Society of America, Vol. 55, No. 2, February 1965, pp. 145-149. Analyzes the consequences in terms of Airy patterns, amplitude distributions and three-dimensional intensity distributions using semitransparent and phase annuli patterns.

13. W. T. Welford, "Use of Annular Apertures to Increase Focal Depth", Journal of the Optical Society of America,

Vol. 50, No. 8, August 1960, pp. 749-753. A theoretical study of the use of an annular aperture, in terms of the changes in Airy pattern, depth of focus, and resolution.

14. S. C. Som, "Influence of Partially Coherent Illumination on the Performance of Non-Airy Pupil Functions in Microscopic Systems", Applied Optics, Vol. 11, No. 3, March 1972, pp. 655-661. This paper treats the theory and relative effects on depth of focus and resolution, relative to Airy objectives, of using different types of pupil functions with partially coherent illumination.

15. T. Fujita et al, "Blazed gratings and Fresnel lenses fabricated by electron-beam lithography", Optics Letters, Vol. 7, No. 12, December 1982, pp. 578-580. Micro Fresnel-zone-plate lenses formed by writing circular patterns on an electron beam resist film and etching in accordance with electron dose distribution. Effects on diffraction efficiency are studied.

16. S. K. Case et al, "Multifacet holographic optical elements for wave front transformations", Applied Optics, Vol. 20, No. 15, 1 August 1981, pp. 2670-2675. A system for expanding and spatially redistributing a laser light beam uses a first hologram to control spatial and intensity distribution and a second hologram to produce a desired phase front. The first hologram comprises a rectangular array of small cells or facets.

17. Jean Claude Fouéré et al, "Focusing Errors in a Collimating Lens or Mirror: Use of a Moiré Technique", Applied Optics, Vol. 13, No. 6, June 1974, pp. 1322-1326. Employs two gratings, successively illuminated by partially coherent light to form a moiré pattern which can be observed in order to study the degree of collimation of an optical system.

18. T. C. Chang et al, "System for Aligning and De-centering Using Moiré Technique", Journal of the Optical Society

of America, 1983 Annual Meeting, p. 1911. Two Ronchi rulings are used in tandem, with laser light being directed through a lens under test and the Ronchi rulings to give a moiré pattern. By adjusting the lens until the pattern is stationary when the lens is rotated, tilt and centration are simultaneously corrected.

Copies of these publications are enclosed.

Respectfully submitted,

BOGUCKI, SCHERLACHER, MOK & ROTH

By: Raymond A. Bogucki

Raymond A. Bogucki
Registration No. 17,426
Attorneys for Applicant

RAB/io
Enclosures

Suite 704
3345 Wilshire Boulevard
Los Angeles, California 90010
(213) 386-7701

Sheet 1 of 6

| Form PTO-1449 (REV. 2-83) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 2549 | SERIAL NO. 108,435 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | APPLICANT Theodore R. Whitney | |
| | FILING DATE October 13, 1987 | GROUP 257 |

MAIL ROOM DEC 22 1987 U.S. PAT. & TRADEMARK OFF.

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |

RECEIVED JAN 12 10 26 AM '88 U.S. PATENT AND TRADEMARK OFFICE

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**OTHER DOCUMENTS** *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| EXAMINER INITIAL | | |
|---|---|---|
| [initials] | I | Kenro Miyamoto, "The Phase Fresnel Lens", Journal of the Optical Society of Society of America, Vol. 51, No. 1, Jan. 1961, pp. 17-20 14 |
| [initials] | I | Melvin H. Horman, "Efficiencies of Zone Plates and Phase Zone Plates", Applied Optics, Vol. 6, No. 11, Nov. 1967, pp. 2011-2013 14 |
| [initials] | I | S. Mallick, "Degree of Coherence in the Image of a Quasi-Monochromatic Source", Applied Optics, Vol. 6, No. 8, August 1967, pp. 1403-1405 14 |

EXAMINER [signature] DATE CONSIDERED 9-13-88

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G3044

Sheet 2 of 6

| Form PTO-1449 (REV. 2-83) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 2549 | SERIAL NO. 108,435 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT *(Use several sheets if necessary)* | APPLICANT Theodore R. Whitney | |
| | FILING DATE October 13, 1987 | GROUP 257 |

U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | | |
|---|---|---|---|
| [initials] | | I | H. H. Hopkins, Wave Theory of Aberrations, Oxford at the Clarendon Press, 1950, pp. 47-55 14 |
| [initials] | | I | Keivin Burns et al, "Energy Levels and Wavelengths of the Isotopes of Mercury-199 and -200", Journal of the Optical Society of America, Vol. 62, No. 10, October 1952, pp. 717-718 14 |
| [initials] | | I | John M. McLeod, "The Axicon: A Type of Optical Element", Journal of the Optical Society of America, Vol. 44, No. 8, August 1954, pp. 592-597 14 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| [signature] | 9-13-88 |

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G3045

Sheet 3 of 6

| Form PTO-1449 (REV. 2-83) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 2549 | SERIAL NO. 108,435 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | APPLICANT Theodore R. Whitney | |
| | FILING DATE October 13, 1987 | GROUP 257 |

U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |

FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | |
|---|---|
| TBC | H. Madjidi-Zolbanine et al, "Holographic correction of both chromatic and spherical aberrations of single glass lenses", Applied Optics, Vol. 18, No. 14, 15 July 1979, pp. 2385-2393 |
| TBC | H. Dammann, "Blazed Synthetic Phase-Only Holograms", Optik 31, Heft 1, 1970, Seite 95-104 |
| TBC | E. G. Loewen et al, "Grating efficiency theory as it applies to blazed and holographic gratings", Applied Optics, Vol. 16, No. 10, October 1977, pp. 2711-2721 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| [signature] | 9-13-88 |

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G3046

Sheet 4 of 6

| Form PTO-1449 (REV. 2-83) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 2549 | SERIAL NO. 108,435 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | APPLICANT Theodore R. Whitney | |
| | FILING DATE October 13, 1987 | GROUP 257 |

U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| [initials] | I | Philip S. Considine, "Effects of Coherence on Imaging Systems", Journal of the Optical Society of America, Vol. 56, No. 8, August 1966, pp. 1001-1009 14 |
| [initials] | | C. S. Ih et al, "Improved randon spatial phase modulation for speckle elimination", Applied Optics, Vol. 17, No. 9, 1 May 1978, pp. 1447-1454 14 |
| [initials] | I | Brian J. Thompson, "Diffraction by Semitransparent and Phase Annuli", Journal of the Optical Society of America, Vol. 55, No. 2, February 1965, pp. 145-149 14 |

EXAMINER [signature] DATE CONSIDERED 9-13-88

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G3047

Sheet 6 of 6

| Form PTO-1449 (REV. 2-83) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 2549 | SERIAL NO. 108,435 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | APPLICANT Theodore R. Whitney | |
| | FILING DATE October 13, 1987 | GROUP 257 |

U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| TLC | S. K. Case et al, "Multifacet holographic optical elements for wave front transformations", Applied Optics, Vol. 20, No. 15, 1 August 1981, pp. 2670-2675 |
| TLC | Jean Claude Fouere et al, "Focusing Errors in a Collimating Lens or Mirror: Use of a Moire Technique", Applied Optics, Vol. 13, No. 6, June 1974, pp. 1322-1326 |
| TLC | T. C. Chang et al, "System for Aligning and Decentering Using Moire Technique", Journal of the Optical Society of America, 1983 Annual Meeting, p. 1911 |

| EXAMINER | DATE CONSIDERED |
|---|---|
| Terry Callaghan | 9-13-88 |

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G3048

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/108,435 | 10/13/87 | WHITNEY T | 2549 |

MERCHANT & GOULD
333 SOUTH GRAND AVENUE
SUITE 1650
ANGELES, CA 90071

| EXAMINER | |
|---|---|
| CALLAGHAN, T | |
| ART UNIT | PAPER NUMBER |
| 257 | 5 |

DATE MAILED: 10/26/88

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined [ ] Responsive to communication filed on ______ [ ] This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), — days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. [✓] Notice of References Cited by Examiner, PTO-892.
2. [✓] Notice re Patent Drawing, PTO-948.
3. [✓] Notice of Art Cited by Applicant, PTO-1449
4. [ ] Notice of informal Patent Application, Form PTO-152
5. [✓] Information on How to Effect Drawing Changes, PTO-1474
6. [ ] ______

Part II SUMMARY OF ACTION

1. [✓] Claims 1-110 are pending in the application.

   Of the above, claims 40-60 and 66-110 are withdrawn from consideration.

2. [ ] Claims ______ have been cancelled.

3. [ ] Claims ______ are allowed.

4. [✓] Claims 1-39 and 61-65 are rejected.

5. [ ] Claims ______ are objected to.

6. [ ] Claims ______ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on ______. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).

10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on ______. has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed ______, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. ______; filed on ______.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

PTOL-326 (Rev. 7-82) EXAMINER'S ACTION

Applicant's election with traverse of Group I in Paper No. 4 is acknowledged. The traversal is on the grounds(s) that the art most relevant to the claims of Group I will inherently encompass Groups II and III, and that the question of whether the particulars of the sub-combination are needed in the combination cannot be determined until the search is completed. This has not been found persuasive because separate searches are required for the inventions of Groups I-III, which shows that the most relevant art to the claims of Group I will not inherently encompass Groups II and III. Whether or not the particulars of any subcombination are needed to make the combination patentable, is irrelvant to the issue of whether or not the restriction was proper. Restriction requirements are based on the claims as filed since the Examiner assumes the applicant believes each independent claim is patentable.

The requirement is still deemed to be proper and is therefore made FINAL.

Claims 40-60 and 66-110 are withdrawn from further consideration by the examiner, 37 CFR 1.142(b), as being drawn to a nonelected invention, the requirement having been traversed in Paper No. 4.

The subject matter of this application admits of illustration by a drawing to facilitate understanding of the invention. Applicant is required to furnish a drawing under 37 CFR 1.81.

Claims 14 and 15 are directed to an optical system comprising a microscope; however, no such drawing shows the optical system of a microscope.

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. 112, first paragraph, as failing to adequately teach how to make and/or use the invention, i.e., failing to provide an enabling disclosure.

The specification fails to teach how an optical system such as that claimed in claims 14 and 15 can be comprised of a microscope.

The disclosure also fails to teach how to make an optical system wherein a phase transmission grating or phase plate is used to correct spherical aberrations produced by the optical system. In other words, it is not taught how to design a phase plate that corrects the spherical aberations that are produced by a lens system as there is no teaching as to how any particular lens system is to be designed. It would also be necessary to teach how to make the optical system so that one would know where the critical aperture is.

Claims 1-39 and 61-65 are rejected under 35 U.S.C. 112, first paragraph, for the reasons set forth in the above objection to the specification.

Claims 1, 2, 4, 6-9, 16, 20, 23-25, 27, 29, 30, 32-39, 61 and 62 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In claim 1, "the lens system" lacks proper antecedent basis. In claim 2, "the light energy" lacks antecedent basis. In claim 4, it is not clear what is meant by "with respect to a phase reference". In claim 6, the terminology "at some fraction of the critical aperture" is vague. In claim 7, "the sets of patterns are configured with phase changes" appears nonsensical. Should this be changed to --the sets of patterns are configured to produce phase changes in the light --? In claims 7 and 8, it is not clear what is meant by "a pupil function" or "a selected pupil function". In claim 9, "the bending of the wavefront" lacks antecedent basis. In claim 16, the terminology "providing an approximation of the desired light distribution" is vague. Also in claim 16, "the wavefront" lacks antecedent basis. It is not clear what is meant by the language of the last two lines of claim 16. In claim 20, it is not clear what is being referred to by "the waves". Also in claim 20, "the spherical aberration"

lacks antecedent basis. In claim 20, it is not clear what is meant by "less maximum difference". Also in claim 20, "the image plane" lacks antecedent basis. In claim 23, it is not clear what is meant by "1/20 wave precision". In claim 24, it is not clear what is meant by "in increments to an integral maximum". It is not clear what is meant by lines 10-13 of claim 25. Also in claim 25, it is not clear what is meant by "a second predetermined function of the ray height". In claim 27, it is not clear what is meant by "negative chromatism". In claims 29, 36 and 37 it is not clear what is meant by "a pupil function". Also in claim 29, "the phase relation of the plateaus" lacks antecedent basis. In claim 30, it is not clear what is meant by "phase fashion". Also in claim 30, "the maximum bending" lacks antecedent basis. In claim 32, "the light energy" lacks antecedent basis. Also in claim 32, "the duration of exposure" lacks antecedent basis. In claim 33, it is not clear what is meant by "idealized specifications". Also in claim 33, lines 7-9 appear nonsensical and lines 9-13 are unclear. In claim 34, it is not clear what is meant by "at the minimum". In claim 35, it is suggested that "optical path" be changed to --optical alignment--. In claim 36, it is suggested that "the monochromatic light is at about 248 nm wavelength" be changed to --the wavelength of the monochromatic light is about 248 nm--. Also in claim 38, it is not clear what is meant by "the

maximum height differential." In claim 39, it is not clear what is meant by "per nominal ring...wave height". In claim 61, it is not clear how a transmission grating can adjust the wavelength of a monochromatic light source. Also in claim 61, "the object being illuminated" lacks antecedent basis, and it is not clear what is being aligned. In claim 62, "the first transmission grating pattern" lacks antecedent basis. All the independent claims describe the phase plate in different terms such as "phase transmission grating", "transmissive blazed grating plate", or "transmission grating structure", it would clarify the issues by using consistent terminology or by describing the differences if there is any.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at

the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 1-12, 14, 15, 25, and 26 are rejected under 35 U.S.C. 103 as being unpatentable over Miyamoto in view of Freeman.

Miyamoto teaches that a phase grating may be added to a lens system to compensate for aberrations produced by the lens elements. Miyamoto fails to teach a phase grating that includes a plurality of sets of plateaus.

Freeman teaches a phase grating that includes a plurality of sets of concentric plateaus.

It would have been obvious to one of ordinary skill in the art to use the phase grating taught by Freeman in an optical system for the purpose of correcting any of the aberrations that are produced by the other lens elements as is suggested by Miyamoto. Using a monochromatic light source in "an optical system" would be an obvious design expedient.

Claims 16-39 are rejected under 35 U.S.C. 103 as being unpatentable over Miyamoto in view of Freeman and Mallick.

Miyamoto also fails to teach the use of a light source having any specific characterisics such as temporal or spacial coherence.

Mallick teaches a method of measuring the modulus of the degree of coherence in a plane illuminated

directly or through an optical system by a quasi-monochromatic source which may be coherent, partially coherent, or incoherent.

It would have been obvious to one of ordinary skill in the art to use a monochromatic light source having a certain degree of coherence, as taught by Millick, with an optical system having aberrations that are compensated for using the phase grating taught by Freeman and Miyamoto.

Claims 61-65 are rejected under 35 U.S.C. 103 as being unpatentable over Knop in view of Freeman.

Knop teaches a grating having different regions designed for different wavelengths of illumination. Knop fails to teach that the grating can be formed concentically.

Freeman teaches a phase grating that is formed concentrically.

It would have been obvious to form the grating taught by Knop in concentric tracks as is taught by Freeman for the purpose of using the grating in conjunction with spherical lens elements.

Claim 13 is rejected under 35 U.S.C. 103 as being unpatentable over Miyamoto in view of Dammann.

Dammann teaches a phase grating formed with parallel tracks.

It would have been obvious to use the phase grating taught by Dammann with a cylindrical lens for the

purpose of correcting the aberrations produced by the cylindrical lens as is taught by Miyamoto.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Bryngdahl teaches that a blazed circular grating can be used as an axicon.

Brody et al teaches a microscope that utilizes a phase plate.

Fay et al teaches a multiple wavelength linear one plate alignment apparatus.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Terry Callaghan whose telephone number is (703) 557-3109.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 557-3311.

TC

Terry Callaghan/mjg
(703) 557-3109
October 1, 1988

John K. Corbin

JOHN K. CORBIN
SUPERVISORY PATENT EXAMINER
GROUP ART UNIT 257

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

SERIAL NO. 108435 | GROUP ART UNIT 257 | ATTACHMENT TO PAPER NUMBER 5

## NOTICE OF REFERENCES CITED

APPLICANT(S) Whitney

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4057326 | 11/77 | Knop | 350 | 162.19 | — |
| | B | 4637697 | 1/87 | Freeman | 350 | 452 | — |
| | C | 4704033 | 11/87 | Fay et al | 356 | 401 | 3-6-86 |
| | D | 4721362 | 1/88 | Brody et al | 350 | 3.82 | 5-31-85 |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PERTINENT PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Bryngdahl, "Axicon", IBM Technical Disclosure Bulletin, Vol. 13, No. 1, June 1970, p. 81. |
| S | |
| T | |
| U | |

EXAMINER [signature] | DATE 9-25-88

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

G3175

PTO - 948
(Rev. 8-82)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

| ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|
| S.N. | 108435 |

GROUP 250

# NOTICE OF PATENT DRAWINGS OBJECTION

Drawing Corrections and/or new drawings may only be submitted in the manner set forth in the attached letter, "Information on How to Effect Drawing Changes" PTO-1474.

A. ☒ The drawings, filed on 10/13/87, are objected to as informal for reason(s) checked below:

1. ☒ Lines Pale.
2. ☐ Paper Poor.
3. ☒ Numerals Poor. 5,Rule
4. ☐ Lines Rough and Blurred.
5. ☐ Shade Lines Required.
6. ☐ Figures Must be Numbered.
7. ☐ Heading Space Required.
8. ☐ Figures Must Not be Connected.
9. ☐ Criss-Cross Hatching Objectionable.
10. ☐ Double-Line Hatching Objectionable.
11. ☐ Parts in Section Must Be Hatched.
12. ☐ Solid Black Objectionable.
13. ☐ Figure Legends Placed Incorrectly.
14. ☐ Mounted Photographs.
15. ☐ Extraneous Matter Objectionable. [37 CFR 1.84 (1)]
16. ☐ Paper Undersized; either 8½" x 14", or 21.0 cm. x 29.7 cm. required.
17. ☐ Proper A4 Margins Required:
    - ☐ TOP 2.5 cm.
    - ☐ RIGHT 1.5 cm.
    - ☐ LEFT 2.5 cm.
    - ☐ BOTTOM 1.0 cm.
18. ☒ Other: legends poor

B. ☒ The drawings, submitted on 10/13/87, are so informal they cannot be corrected. New drawings are required. Submission of the new drawings MUST be made in accordance with the attached letter.

G3176

4-25-89

S/N 07/108,435 PATENT

APR 24 1989

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Theodore R. Whitney Examiner T. Callaghan

Serial No.: 108,435 Group Art Unit 257

Filed October 13, 1987 M&G No. 30048.1US01

Title "HIGH RESOLUTION IMAGERY SYSTEMS AND METHODS"

8/a + attach
FJ 5-5-89
AmD 5/6/89

RECEIVED MAY 5 9 05 AM '89

## AMENDMENT

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

In response to the Office Action mailed October 26, 1988, please amend the above-identified application as follows:

**In the Specification**

Page 6, line 26, after "the" (second occurrence) delete "critical"; and

line 27, after "aperture" and before the period (".") insert --stop--.

Page 7, line 24, after "the" (second occurrence) and before "aperture" delete "critical"; and

line 24, after "aperture" and before "of" insert --stop--.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231 on April 25, 1989
(Date of Deposit)

David G. Johnson

Page 9, line 10, after "the" delete "critical";

line 11, after "aperture" and before "and" insert --stop--; and

line 14, after "approximately" and before "microns" change "0.144" to --0.427--.

Page 21, line 12, after "the" and before "aperture" delete "critical";

line 12, after "aperture", insert --stop--;

line 26, after "and" and before "aperture" delete "critical"; and

line 26, after "aperture" and before "is" insert --stop--.

Page 22, line 2, after "phase" and before "introduced" change "log" to --lag--.

Page 23, line 20, after "about" and before "nm" change "20.6" to --61.0--;

line 21, after "about" and before "nm" change "143.9" to --426.9--; and

line 27, after "over" and before "and" change "1°" to --3.59°--.

Page 24, line 3, after "plate" and before the period (".") insert --minus one--; and

line 25, after "about" and before "nm" change "140" to --427--.

Page 25, line 14, after "the" and before "aperture" delete "critical";

line 14, after "aperture" and before "are" insert --stop--; and

line 16, before "light" change "redistributes" to --redistribute--.

Page 26, line 21, after "in" and before "beam" insert --the--.

Page 27, line 20, after "the" and before "aperture" delete "critical"; and

line 20, after "aperture" and before "can" insert --stop--.

Page 41, line 4, after "than" and before "nm" change "144" to --427--.

Page 45, line 13, after "the" (first occurrence) and before "aperture" delete "critical"; and

line 13, after "aperture" and before "position" insert --stop--.

**In the claims**

(Please amend claim 1 as follows:)

--1. (Amended) A system for producing a highly corrected optical image comprising:

a1 cont'd

substantially monochromatic light source means providing a plurality of light sources having limited spatial coherence and substantial temporal coherence within a distributed light beam area;

an optical system within the path of the light beam and having [a critical] an aperture stop; and

microlithographic phase transmission grating means at the [critical] aperture stop, the grating means including a microstructure comprising a plurality of sets of plateaus, the light [source] beam being disposed to provide light distributed through the [lens] optical system and the sets of plateaus of the grating means.--

a cont'd

Please rewrite claim 2 as follows:

--2. (Amended) The invention as set forth in claim 1 above, wherein the sets of plateaus provide incremental amounts of phase retardation in the light energy from the light source means at the [critical] aperture stop [and the light source means provides a plurality of light sources distributed throughout a beam area].--

---

Please rewrite claim 4 as follows:

2 a

--4. (Amended) The invention as set forth in claim 3 above, wherein the optical system has spherical type aberration and the non-linear patterns of the grating means produce a varying phase retardation as a function of radius, the phase retardation opposing and compensating the spherical type aberration of the optical system [with respect to a phase reference].--

---

Please rewrite claim 6 as follows:

--6. (Amended) The invention as set forth in claim 4 above, wherein the sets of non-linear patterns are configured with at least one 180° phase change at some fraction of the dimension of the [critical] aperture stop.--

a3

Please rewrite claim 7 as follows:

--7. (Amended) The invention as set forth in claim 4 above, wherein the sets of patterns are configured with [phase] changes in the sets of plateaus at various incremental radii to produce phase changes in the light, providing a pupil function comprising more than one annular zone.--

Please rewrite claim 9 as follows:

a4

--9. (Amended) The invention as set forth in claim 1, wherein the [bending] grating means bends the light of the wavefront passing through the [critical] aperture stop [is] at angles limited to [angles of] less than approximately 5°.--

Sub B1

Please rewrite claim 16 as follows:

--16. (Amended) An optical system for providing a desired light distribution at a chosen surface, the system comprising:

a5 cont'd

light source means providing a wavefront of light that is temporally coherent to a selected number of waves and of limited spatial coherence;

optical lens means disposed in the path of the light for refracting the light to form a wavefront providing an approximation of the desired light distribution at the chosen surface; and

a5 cont'd

phase plate means disposed with the optical lens means for locally phase retarding the wavefront to a substantially smaller degree than the number of waves of temporal coherence to obtain the desired light distribution at the chosen surface.--

---

Please rewrite claim 20 as follows:

--20. (Amended) The invention as set forth in claim 17 above, wherein the waves in the light from the light source means are temporally coherent to in excess of about 10,000 waves and the spherical aberration of the optical lens means is limited to about 75 waves or less maximum difference from a spherical aberration-free condition, and wherein the light source means provides of the order of $10^2$ point sources of light on each point at the image plane.--

a6

---

Claim 23, line 5, after "about" and before "wave" change "1/20" to --1/20th--.

---

Please rewrite claim 24 as follows:

--24. (Amended) The invention as set forth in claim 23 above, wherein the multi-plateau rings have varying slopes and widths and provide progressively varying phase delays in increments of [an integral] a maximum that is an integral number.--

a7 cont'd



G3186

(Please rewrite claim 25 as follows:)

--25. (Amended) A system for precision adjustment of the shape of the wavefront of a beam of light energy comprising:

means providing illumination in the form of a multiplicity of light sources of substantially the same wavelengths throughout a beam area;

a plurality of refractive lens elements in the path of the beam illumination and together providing light imaging with predetermined aberration characteristics which vary symmetrically as a predetermined function of the ray height at the [critical] aperture stop, but [possessing] providing a high degree of correction for aberration components which vary as the image height or as the angular orientation of the ray meridian at the [critical] aperture stop; and

a7 Cont'd

transmission grating means at the [critical] aperture stop in the path of the beam illumination and cooperative with the refractive lens elements for phase delay and redirection of the illumination in accordance with a second predetermined function of the ray height at the [critical] aperture stop and compensating for the predetermined [lens] aberration characteristics of the refractive lens elements which vary symmetrically as a predetermined function of the ray height.--

---

Claim 26, line 2, after "the" delete "critical"; and line 2, after "aperture" insert --stop--.

Please rewrite claim 27 as follows:

--27. (Amended) A system for providing a precisely compensated monochromatic image on a semiconductor wafer comprising:

a series of refractive lens elements disposed along an optical axis and having [a critical] an aperture stop, the cumulative spherical type aberration being no greater than about 75 waves and the cumulative chromatic [aberration] dispersion being positive;

a8

a transmission grating disposed at the [critical] aperture stop, the grating having a plurality of rings each with multiple plateaus providing local wavefront compensation for the spherical type aberration and a compensating negative [chromatism] chromatic dispersion for light of a predetermined wavelength; and

illuminating means directing substantially monochromatic light along the optical axis, the substantially monochromatic light being of the predetermined wavelength and having temporal coherence of the order of 10,000 waves and being substantially spatially incoherent.--

Please rewrite claim 29 as follows:

--~~29~~ 30. (Amended) The system as set forth in claim ~~28~~ 28 above, wherein the plurality of rings each have progressively varying plateaus and are arranged in selected subsets in which the phase relation in the progressions of the plateaus [varies] vary at least one radial region relative to the rings to define a pupil

a9 Cont'd

function of at least two zones, and wherein the illuminating means comprises a pulsed laser source.--

a9 cont'd

(Please rewrite claim 30 as follows:)

--~~30~~ 29. (Amended) The system as set forth in claim ~~28~~ 28 above, wherein the rings are varied in width and slope to provide a wavelength of optical retardation to compensate locally for wavefront variations in the composite wavefront, wherein the phase relation of the waves is varied in π phase fashion, and wherein the transmission grating bends the light to a maximum [bending introduced by the grating is] angle of about 5°.--

---

Please rewrite claim 32 as follows:

a10 cont'd

--32. (Amended) The system as set forth in claim 31 above, wherein the phase randomizer means comprises means for sensing the degree of spatial coherence in the light sources, and means responsive to the sensed degree of coherence for introducing varying relative movement of the light sources between the quasi-random phase plates, and wherein the illuminating means is controllable and the system further comprises means responsive to the light energy of the illuminating means for controlling the duration of [exposure] operation of the illuminating means.--

(Please rewrite claim 33 as follows:)

--33. (Amended) An optical system for providing precise aspheric correction of a composite wavefront having aberrations from idealized specifications comprising:

a transmissive blazed grating plate having a microlithographic pattern of incrementally varying narrow tracks, adjacent tracks varying differentially in height, the maximum differential height of the tracks on the plate being [at a maximum] proportioned to the ratio of one wavelength of incident monochromatic light at a selected wavelength divided by the difference of the index of refraction of the plate from unity, the [width] widths of the tracks through the pattern being proportioned to provide local phase delay of the wavefront according to a predetermined function for the composite wavefront to effect redistribution of the microstructure of the wavefront, the widths being precise to within about [1/20] 1/20th wavelength of the monochromatic light [over the aperture to effect redistribution of the microstructure of the wavefront]; and

means for illuminating the pattern on the plate with monochromatic light of the selected wavelength, the light having predictable periodicity and constituting multiple phase random sources.--

Please rewrite claim 34 as follows:

--34. (Amended) The invention as set forth in claim 33 above, wherein the monochromatic light is in the ultraviolet region, wherein the tracks are concentric and arranged in periodic sequences in which heights vary progressively, wherein the minimum track widths at the minimum are of the order of 1 micron, and wherein the [maximum bending of] plate bends the light [introduced by the plate is] to a maximum of about 3°.--

a[10] cont'd

Claim 35, line 3, after "optical" and before "with" change "path" to --combination--.

Please rewrite claim 36 as follows:

--36. (Amended) The invention as set forth in claim 35 above, wherein the system has [a] an [critical] aperture stop and the plate is disposed at the [critical] aperture stop, wherein the progressive patterns are arranged in subsets of different phase to provide a pupil function comprised of at least two annular zones, and wherein the cumulative aberrations in the spherical lenses that are compensated are principally spherical type aberration and chromatism.--

a[11]

Please rewrite claim 38 as follows:

--38. (Amended) The invention as set forth in claim 37 above, wherein the wavelength of the monochromatic light is at about 248 nm [wavelength], and wherein the maximum height differential [of the] between adjacent plateaus is about [0.144] 0.427 microns.--

a[12]

Please rewrite claim 39 as follows:

--39. (Amended) The invention as set forth in claim 38 above, wherein the tracks are arranged in rings having 8 tracks per [nominal] ring varying incrementally in 1/8th wavelength optical retardation steps from 0 to 7/8th wave height for rings within each zone.--

Please rewrite claim 61 as follows:

--~~61~~ 40. (Amended) A system for high resolution imagery on an object being illuminated comprising:

an optical system having [a critical] an aperture stop;

a[13] cont'd

first substantially monochromatic light source means of a given wavelength transmitting through the optical system;

light bending means including a first transmission grating structure disposed at the [critical] aperture stop for providing areally distributed varying wave delays in light of the first wavelength transmitted through the optical system to provide an adjusted composite [wavelength] wavefront, said light bending means also including a second transmission grating structure



G3192

displaced from the first transmission grating structure; and

second monochromatic light source means of a second wavelength illuminating the second transmissive grating structure for alignment of the object being illuminated relative to the optical system.--

a13 concl'd

Claim 62, line 2, after "grating" and before "is" change "pattern" to --structure--.

**Remarks**

Applicant respectfully requests reconsideration of the rejection of claims 1-39 and 61-65, as amended without the addition of new matter. Clarifying amendments were made to the specification, principally because of an inadvertence in the expression for the thickness of the phase plate layers, given at page 24, line 3. The sentence starting at page 23, line 31 and continuing to page 24, line 3 originally stated that the maximum differential height is proportioned to the ratio of 1 wavelength of the monochromatic light divided by the index of refraction of the plate. This was not correct, however, inasmuch as if the value of the index of refraction is unity the differential height would have to be far greater than one wavelength in order to obtain the needed delay and bending power. Consequently, it is evident that the equation was misstated and that the correct relation is $\lambda/n-1$, where n is the index of refraction and $\lambda$ is the wavelength of the incident light. Most of the changes in the specification have been

made to correct dimensions as a result of this error. No new matter is involved in the correction, inasmuch as it is merely stating a physical law correctly.

It is noted, from the Office Action, that the term "critical aperture" may not be as precise or in general use as the term "aperture stop". Thus, throughout the specification and claims, the more generally used term "aperture stop" has been employed.

The specification was objected to, and the drawings as well, for failure to disclose an optical system comprising a microscope, as set forth in claims 14 and 15. Applicant respectfully points out, however, that a microscope example is shown in Fig. 13, and described at page 45, line 11 et seq. Thus it is respectfully requested that the request to furnish a drawing and that the objection to the specification under 35 U.S.C. 112, first paragraph, be withdrawn.

With respect to the drawings, it is noted that there is an existing objection to the informality of the drawings, and complete final drawings will be submitted at an appropriate time after an indication of allowance.

Objection was also made to the specification for failing to "teach how to make an optical system" because there is "no teaching as to how any particular lens system is to be designed." (Page 3 of the Office Action). In this connection it was suggested that it would also be necessary to teach one to know where the critical aperture is. Applicant respectfully submits that in the

and the basis of the rejection, and appreciation must be expressed for the care and diligence exercised in reviewing the claims and in suggesting modifications. Applicant has carefully reviewed the claims in the light of these rejections, and has amended them for clarity of expression wherever feasible, without the addition of new matter. The rejections, and consequent amendments or comments, are treated in the same order as presented in the Office Action.

In claim 1, "lens" system in the last line has been changed to "optical" system for proper antecedent expression. In claim 2, the reference to "light energy" has been supplemented by adding "from the light source means", it being submitted to be evident that any light source means does emanate light energy. The expression "with respect to a phase reference" in claim 4, found to be "not clear" has been deleted and it is submitted that the claim is clear and definite in its present form.

In claim 6, the term "critical aperture" has been changed to "aperture stop" and the "fraction" referenced is now expressed as a "fraction of the dimension of the aperture stop". As supportive material, applicant appends hereto, as Attachment B, the title page, inside title page and page 2-52 from the book "Handbook of Optics", Walter G. Driscoll editor, published by the McGraw-Hill Book Company in 1978. On page 2-52, the term "aperture stop" is defined as a physical diameter in specific terms. Consequently, the use of the expression "fraction of the dimension" is submitted to be appropriate.

In claim 7, objection was made as to an expression as to "phase changes" and the suggestion kindly made as to revised terminology has been incorporated in the claim. The expression "pupil function" was objected as to claims 7 and 8. This term, however, has an ordinary and accepted meaning in the art. One may start with the fact, referring to Attachment B hereto, that "entrance pupil" is a defined and recognized term, as is the term "exit pupil" although page 2-52 mistakenly uses the term "entrance pupil" in referring to the image of the aperture stop formed by elements behind the aperture stop. Moreover, applicant herewith appends, as Attachment C, extracts from pages of the book "Principles of Optics" by Max Born et al, published by Pergamon Press, London (1959), these pages being pages 480, 481, 482 and 483. Also enclosed in Attachment C is the first page from an article entitled "Spatial Filter For Increasing The Depth Of Focus" by J. Ojeda-Castaneda et al, published in Optics Letters, Vol. 10, No. 11, November 1965, p. 820, and the first page from an article entitled "Axial Behavior Of Pupil Plane Filters" by C.J.R. Sheppard et al, published in Vol. 5, No. 5, May 1988 of the Journal Of The Optical Society Of America, p. 643. The usage of the term "pupil function" or its related term "pupil filter" are presented as evidence of not only of the meaning of the term but of the widespread usage in the technical literature. The term "pupil function" as typically used means some sort of modifying function for phase and amplitude which is introduced into the pupil of an optical system.

Claim 9 was rejected because of a lack of antecedent for the "bending of the wavefront". Although it would be proper to describe this characteristic in an optical system of this type without setting forth an antecedent basis, applicant has amended claim 9 to specify the bending function.

Claim 26 was rejected as to the "approximation of the desired light distribution", and this language has been amended to speak both of the formation of a wavefront to provide the approximation of the desired light distribution, and the chosen surface as to which a desired light distribution is to be established. The light source means has also been set forth as providing a "wavefront of light" to provide an antecedent for the use of "wavefront" in line 10. The last two lines of claim 16 were also queried, and these have been amended to specify that the phase retardation is local and that the retardation is to a substantially smaller degree than the number of waves of temporal coherence needed to obtain the desired light distribution at the chosen surface. The importance in value of maintaining the temporal coherence orders of magnitude greater than the possible retardation of the wavefront is set forth at page 20 of the specification as originally filed, so that the claim is thus submitted to be clear and definite.

As to claim 20, a question was raised as to the expression "the waves" in the second line, which are now set forth as "the waves in the light from the light source means" in relation to their temporally coherent state. No change has been made as to

claim 20, however, with respect to the "spherical aberration" except to say that it is "of the optical lens means" since spherical aberration should be a universally understood property. The "maximum difference" is to be understood to be of "about 75 waves or less" and is referred to a "spherical aberration free condition", as now amended. The expressions used may be referred to the specification which is believed to clearly explain the relationship of the maximum acceptable spherical aberration. No amendment has been made in claim 20 as to the "image plane", because it is believed that an antecedent is not required to be set forth for this inherent property or characteristic of an optical system.

In claim 23, questioned as to the expression "1/20 wave precision" it is believed that simply changing the numerical factor to "1/20th" suffices to express the thought that the phase delay is precise to within 1/20th of a wave. In claim 24, a question was raised as to the expression "increments to an integral maximum", which has now been changed to "increments to a maximum that is an integral number.

Claim 25 was questioned as to lines 10-13, but apart from changing the word "possessing" and modifying "critical aperture" to "aperture stop" no change has been made in this language, which is an expression of optical factors which are well understood, and which is based upon a more detailed explanation at page 27 of the specification. Further reference can be made to the details of a standard handbook, such as Attachment A, for a more detailed

explanation if needed. The same claim, No. 25, was also queried as to the "second predetermined function of the ray height", but inasmuch as a first "predetermined function" is set out at line 14 relative to the refractive lens elements, it is appropriate to include the second predetermined function in connection with the transmission grating means.

In claim 27, the term "negative chromatism" has been changed to "negative chromatic dispersion", and chromatic "aberration" on line 6 has been changed to "dispersion", for consistency of terms within the claim and with the specification as filed.

Claims 29, 36 and 37 were rejected for use of the term "pupil function", but in line with the discussion in prior claims no amendment has been made as to these terms, which are regarded as conventional and well understood.

Claim 29, which was questioned as to the antecedent basis for the "phase relation of the plateaus" has been amended so as to specify that the progressions "vary at at least one radial region relative to the rings" to define a pupil function.... Whether an antecedent was required or not, this terminology is submitted to be readily understandable.

In claim 30, the expression "phase fashion" is used in line 5, but this cannot be taken alone, inasmuch as the full expression is "$\pi$ phase fashion", the meaning of which is adequately described in the specification in the examples given. In the same claim 30, the bending function is now described in different terms

which are believed to be positive expressions.

Claim 32 was rejected because of a lack of antecedent for "light energy" and for "duration of exposure". The claim has not been changed as to the term "light energy" inasmuch as in the expression and in the claim it is evident that the illuminating means must generate light energy of some kind under the physical laws of an illuminating body. However, the claim has been amended to set forth that the illuminating means is controllable and that the last mentioned means controls the "duration of operation of the illuminating means".

Claim 33 has been amended for greater clarity in a number of respects, but not with regard to the "idealized specifications", because the entire expression is "aberrations from idealized specifications", and this is thought clearly to connote some deviation from an ideal or norm, or the absence of aberrations. Lines 6-9 have been amended to set forth the maximum differential height as being proportioned to the ratio $\lambda/n-1$, where $\lambda$ is the wavelength of interest and n is the index of refraction. Claims 9-13 have been extensively revised to set forth the relationship of the widths of the tracks through the pattern to the phase delay which is provided and the expression "1/20" wavelength has been

changed to "1/20th" wavelength. These amendments are submitted to overcome any reasonable objections as to form.

In claim 34, the expression "at the minimum" in line 5 has been eliminated and the minimum track widths have been set out along with a change in the revision of the maximum bending of the light that is introduced.

The suggested change in claim 35 of "optical path" to "optical combination" has been effected.

As to claim 38, the suggestion as to revising the second line to specify the "wavelength of the monochromatic light is about 248 nm" has been adopted and the height differential is now set out in terms of being "between adjacent plateaus".

In claim 39, the word "nominal" has been deleted and the incremental variations in tracks are specified as being in given steps "for rings within each zone", which is submitted to clarify the relationship.

In claim 61, the erroneous expression "composite wavelength" has been changed to "composite wavefront", and the "object being illuminated" is now set forth in the preamble to provide a basis for alignment "relative to the optical system" in the last line.

In claim 62, the first "transmission grating pattern" has been changed to "transmission grating structure" for correspondence to parent claim 61.

With respect to the cooperation of specific design equations and measurements for a lens system, the modern state of lens design technique is described in the "Code 5 Design Handbook", version 6.55, published by Optical Research Associates of Pasadena, California and in version 6.95, the latest update being 7 January 1985. As shown on pages Data-42 through Data-53, appended hereto as Attachment D, the use of holographic optical elements is a recognized optical design procedure. The particular design system illustrated is a very sophisticated case which presents an infinitely thin aspheric optical element with a fictitious index of refraction set at n = 10,001. Numerous other examples of the same type can be given.

A question was raised as to the differences that exist between "phase transmission grating", "transmissive blazed grating plate" and "transmission grating structure" with the desire being expressed for the use of consistent terminology. However, applicant is entitled to proper protection consistent with the scope of the invention, and different terminology should be usable so that it is not critical as to whether a structure is "blazed", a "grating", a "plate" or a "grating structure". Even though the primary example shown is of a plate, it is not at all clear that the principles of the invention may not be utilized in some other version or that one or the other expression might not be regarded as ambiguous in some application to a particular structure.

Claims 1-12, 14, 15, 25 and 26 were rejected under 35 U.S.C. 103 over Miyamoto in view of Freeman. Claim 1 has been amended without the addition of new matter to clarify the fact that applicant's concept operates in a wholly different regime, involving totally new problems and new solutions to the problems. The limitations of the Miyamoto approach, referenced in the present specification as filed, are discussed at p. 4, particularly beginning at line 8 and continuing on to p. 5, line 27. If one takes single layer thin film rings having a minimum radial dimension of 0.63 mm, one obtains a binary phase grating or "phase reversal zone plate" which can only function to alternate phase delays between two values. This is of low efficiency, as pointed out by Horman. Furthermore, the large radial rings of this nature proposed by Miyamoto provide only a gross correction, and are totally unsuitable for achieving a final resolution of the order sought by applicant, such as 2500 lines per millimeter. It is not merely, however, a matter of reducing ring size, because, as pointed out first by applicant, the nature and distribution of the light in the beam now becomes of significant importance. As noted on page 5, line 29, wave component distributions, the precise distribution of the illuminating energy, and local, temporal and spatial rearrangement of phase relationships must be taken into account. The amendments to claim 1 are submitted clearly to distinguish over the Miyamoto reference, alone and combined with Freeman which is merely a contact lens introducing Fresnel-type variations to achieve a diffractive correction along with the

refractive correction of the lens itself. There is no reason, of course, to assume that a worker in the art would combine a phase Fresnel lens of Miyamoto with the contact lens of Freeman, the manufacture of this element being by a "material cutting technology" such as a "computer-controlled lathe" as set out at column 3, lines 10-13 therein. Obviously, this could not approach the degree of resolution required since the surface aberrations in the best diamond-turned quartz element are excessive when one seeks to overcome the limitations of refractive multi-lens optical systems. Moreover, Freeman gives consideration only to a design wavelength, whereas the contact lens must operate with the entire optical spectrum and thus does not even approach the question of the characteristics of the incident light and thus does not add anything to Miyamoto, which is also silent on the subject.

Consequently, claim 1 as amended, in specifying a light source means which "provides a plurality of light sources having limited spatial coherence and substantial temporal coherence within a distributed light beam area" in conjunction with an optical system and a microlithographic phase transmission grating means at the aperture stop of the optical system fully distinguishes over this combination of references. Applicant is not claiming a phase grating alone, whether of the type described by Miyamoto or the type described by Freeman but a coactive system in which distributed light of a particular character is used in such manner as to introduce incrementally varying phase retardation to provide a nonlinear correction of a composite wavefront with high

efficiency. The significance of this achievement is that it overcomes a barrier to the resolution achievable with modern optical systems using refractive elements, and at the same time simplifies the refractive element combination, having profound implications for high precision technology such as the semiconductor processing industry.

Claims 1-12, 14 and 15 all depend from claim 1 and distinguish for the additional features set forth therein. Claim 2 as amended, for example, states that the sets of plateaus are at the aperture stop, while claim 3 defines them as comprising "concentric circular patterns having nonlinearly varying radial widths". Claims 4 and 5 describe the system as correcting particular optical aberrations, whereas claims 6-8 deal with changes in the nonlinear patterns to effect the phase change or pupil function, a factor not discussed in any of the art or in the Office Action.

Claims 9 and 10 define the limitation on the bending angle and introduce these "spatially dispersed point sources" of light, respectively, additional factors not mentioned in the art cited. Claims 11 and 12 deal with the axicon version, whereas claims 13-15 relate to the microscope version of Fig. 13.

Claims 25 and 26 distinguish for the same reasons as claim 1, setting forth the combination of the means providing "illumination in the form of a multiplicity of light sources of substantially the same wavelength throughout a beam area", together with the plurality of refractive lens elements defined in terms of

aberration characteristics and the transmission grating means redirecting the illumination in accordance with a second predetermined function to compensate for the aberration characteristics of the refractive lens elements.

Claims 16-39 were rejected under 35 U.S.C. 103 as unpatentable over Miyamoto in view of Freeman and Mallick. The Mallick reference is added because it teaches a method of measuring the modulus of the degree of coherence, so that it is asserted that the light may be coherent, partially coherent, or incoherent. Mallick, however, merely measures the modulus of the degree of coherence, that is, he merely studies a light source in terms of the "degree of coherence from one plane to another in an optical system." (Last sentence on page 1405). There is no suggestion by Mallick as to how the degree of coherence would be beneficially used in an optical system of any type, much less one of the Miyamoto/Freeman type. Note that he does not have any discussion of temporal coherence or spatial coherence separately, nor does he suggest any degree of randomness in the spatial coherence, or any number of waves as to which there must be temporal coherence. Independent claims 16, 21, 25, 27 and 33, all of which characterize the light characteristics of the incident beam are patentably distinguishable, since the Office Action recognizes the deficiency in teaching of light characteristics as to Miyamoto and Freeman.

Claims 61-65 were rejected under 35 U.S.C. 103 over Knop in view of Freeman. Claim 61, however, fully distinguishes as amended over this combination of references. In claim 61, an

optical system having an aperture stop is illuminated by a first light source means, and light bending means including a first transmission grating structure delays the light in an areally distributed manner to provide an adjusted composite wavefront, which is not true in Freeman or in Knop. Freeman has an integrated refractive and diffractive single element, which provide different characteristics so that a bifocal property can be achieved. Knop also has a single element using "two superimposed angularly-displaced diffractive structures" (column 2, lines 46 and 47) and these are illuminated by white light (column 3, line 17) meaning that there is no second transmission grating structure "displaced from the first" as in claim 61, or any "second monochromatic light source means". Freeman, as previously discussed, also deals with the entire visible light spectrum, so that neither is even concerned with the monochromatic light source or with the use of two separate monochromatic light sources and two spaced apart transmission grating structures. Consequently independent claim 61 is submitted to be patentable thereover, and dependent claims 62-65 which contain the same distinctions and further distinctions as well are also submitted to be patentable.

Claim 13 was rejected under 35 U.S.C. 103 as being unpatentable over Miyamoto in view of Dammann, which shows a plurality of parallel tracks. As discussed above relative to claim 1, however, adequate distinctions from Miyamoto are submitted to exist therein, and the parallel tracks are claimed only in this context in dependent claim 13. Moreover, claim 13 sets forth a

cylindrical lens means as the optical system, and this feature is not shown or suggested in either Miyamoto or Dammann.

In the light of the above considerations, reconsideration of the rejection of claims 1-39 and 61-65 is respectfully requested.

Respectfully submitted,

MERCHANT & GOULD

Dated: April 25, 1989

By: [signature]

David G. Johnson
Registration No. 31,628
333 So. Grand Avenue, Suite 1650
Los Angeles, California 90071
(213) 485-0100